### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOSEPH PONISCIAK, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No.  10-4232 |
|  | : |  |
| MICHAEL J. ASTRUE, | : |  |
| Commissioner of Social Security Administration, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                    **March 7, 2012**

Presently before the Court is Defendant Michael J. Astrue's ("Defendant") Motion for Summary Judgment against Plaintiff Joseph Ponisciak ("Ponisciak").  For the reasons set forth below, this Motion will be granted.

## I.    BACKGROUND

Ponisciak began his career with the federal government in 1978 with the Department of Labor.  (Compl. ¶ 7.)  When that Department suffered a reduction in its workforce, he was hired by the Social Security Administration ("SSA") in 1982 and continues to work there today.  (Id.)  During this time, Ponisciak was an active union member serving in various positions as chief steward, Vice President of Operations and Executive Vice President.  (Id.)  In these capacities and through Ponisciak's personal claims, he has handled numerous Equal Employment Opportunity ("EEO") actions.  (Id.)  Ponisciak contends that all of the responsible selecting management officials referred to in this Complaint have been involved in these actions.  (Id.)

1

The case before this Court arises from Ponisciak's claims of retaliatory discrimination in four separate SSA job announcements[1] and from the refusal to amend his EEO complaint.[2]  Each claim will be discussed individually in the following:

**A.  Claims of Retaliation Regarding the Four Separate Job Announcements**

**1.      Vacancy Announcement SA 177963: Social Insurance Specialist**

On August 12, 2002, the SSA opened a vacancy announcement for a Social Insurance Specialist for the Disability Quality Branch of the Regional Office for Quality Assessment. (Def.'s Mot. Summ. J, Ex. 2(A) at 3.)  This position was announced externally.[3]  (Id.)  All applications were collected through the USA Jobs website using USA Staffing, an automated computer staffing system administered by the Office of Personnel Management ("OPM").  (Id.)  A computer program determined an applicant's eligibility and rank according to their answers to an online questionnaire.  (Id.)

After receiving the scores, Nancy DeMary ("DeMary"), a Human Resources ("HR") Specialist in Philadelphia, reviewed the eligible candidates to confirm that they met the minimum qualifications for the position.  (Id.)  Qualified candidates were then placed on a Certificate of Eligibles for the two position grades.  (Def.'s Mot. Summ. J, Ex. 2(A) at 4.) Ponisciak ranked 8 out of 9 at the GS-12 level and 3 out of 3 at the GS-11 level.  (Id.)  Due to this being an external selection from an OPM Certificate of Eligibles, OPM rules mandated that

---

[1] SA 177963, SSA-2003-248, SSA-2003-243 and a 120 day temporary Developmental Assignment as an Operations Specialist

[2] Jurisdiction is proper under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § § 2000e to 2000e-17).

[3] External means open to the public in this context.

selection must be made in accordance with the "Rule of Three" and with preference to veterans. (Id.)  The "Rule of Three" requires that candidates must be considered in groups of three percolating down from the highest rated.  (Def.'s Mot. Summ. J, Ex. 2(A) at 5.)  Ponisciak's scores placed him in the top 3 for the GS-11, but out of the top 6 at the GS-12 level.  (Def.'s Mot. Summ. J, Ex. 2(A) at 4.)  In regards to veterans preference, an agency was generally prohibited from choosing a lower ranked candidate over a veteran unless the veteran had declined the position or withdrawn from consideration.  (Def.'s Mot. Summ. J, Ex. 2(A) at 5.) At both levels, Ponisciak ranked lower than two applicants who were veterans, John Anderson and Luis Carrasquillo ("Carrasquillo").  (Id.)  After completion of DeMary's review, the Certificates of Eligibles for each job grade were sent to Larry Fureman ("Fureman"), the selecting official for this vacancy and the Director of the Regional Office of Quality Assurance. (Def.'s Mot. Summ. J, Ex. 2(A) at 4.)

Fureman formed a committee comprised of Gail Davis, Peter Krumbhar, Nicholas Zinni and Judy Yokshan to evaluate the applicants and make recommendations that conformed to the applicable OPM rules.  (Id.)  Using these recommendations, Fureman offered the positions to several candidates who declined.  (Def.'s Mot. Summ. J, Ex. 2(A) at 5.)  On November 30, 2003, he offered the positions to Veria Allen ("Allen") and Carrasquillo, who both accepted. (Id.)

**2.     Vacancy Announcement SSA-2003-248: Social Insurance Specialist**

On August 18, 2003, the SSA posted an internal job vacancy announcement for a Social Insurance Specialist in the Disability Quality Branch of the Regional Office of Quality Assurance under vacancy announcement SSA-2003-248.  (Def.'s Mot. Summ. J.Ex. 2(A)  at 6.)

3

This was the corresponding internal vacancy announcement to SA 177963.  (Def.'s Mot. Summ. J. Ex. 2(A) at 5.)  Hiring selections could be made from either, none or both the external and internal vacancy announcements.  A total of forty-eight candidates, including Ponisciak, applied for the position.  (Def.'s Mot. Summ. J. Ex. 2(A) at 6.)

DeMary was in charge of reviewing the applications to assure that the minimum qualifications were met.  (Id.)  After eliminating many of the candidates for failing to meet these qualifications, DeMary assembled an Assessment Panel consisting of Leonard Roberts and Mahlon Grizzard to scrutinize and rate the remaining candidates.  (Id.)  The Panel ranked Ponisciak second out of six internal candidates.  (Id.)  Ponisciak was found not eligible for the GS-12 Promotion Certificate, but was included as one of three candidates on the GS-11 Promotion Certificate.  (Id.)  However, the selections were made from the external announcement (SA 177963) and; thus, no selections were made from this announcement. (Def.'s Mot. Summ. J. Ex. 2(A) at 7.)

3.      **Vacancy Announcement SSA-2003-243: Social Insurance Specialist**

On August 18, 2003, the SSA posted a job vacancy announcement for a Social Insurance Specialist in the Assistance and Insurance Program Quality Branch of the Regional Office of Quality Assurance.  (Def.'s Mot. Summ. J. Ex. 2(A) at 8.)  A total of forty-eight individuals, including Ponisciak, applied for the position.  (Id.)  HR Specialist DeMary was charged with reviewing the applications to determine whether the candidates met the minimum requirements for the position.  (Id.)  Forty-five candidates were deemed qualified and an Assessment Panel consisting of Robert Safarian and David Wieck was convened to provide further evaluations. (Id.)  Using a 200 point scoring system, each candidate's application was scrutinized.  (Id.)

4

Ponisciak received a score of 173 points placing him tied for twenty-sixth.  (Id.)  Eight candidates received perfect scores of 200 and these applicants were forwarded for further consideration.  (Id.)  No candidates receiving less than a perfect score were referred to Fureman, the selecting official.  (Id.)  Fureman designated Fran McNeal ("McNeal"), the Branch Manager for the Assistance and Insurance Program Quality Branch, to evaluate the applications and make recommendations.  (Def.'s Mot. Summ.J. Ex. 2(A)  at 9.)  McNeal recommended Shannon Lebold and Cheryl Taddei for the positions at a GS-12 grade.  (Id.)  On November 17, 2003, Fureman selected both.  (Id.)

**4.**     **120 Day Temporary Assignment to Operation Specialist**

On or about March 9, 2004, the SSA posted an internal vacancy for a temporary assignment as an Operations Specialist at a GS-11 grade for a term not to exceed 120 days. (Def.'s Mot. Summ. J. at 7.)  Two positions were available: one in Process Area 3 under Operations Manager Genevieve Fardella ("Fardella") and one in Process Area 4 under Operations Manager Robert McBride ("McBride").  (Id.)  The assignment was temporary for a period of less than twenty days and, therefore, to be filled non-competitively.  (Id.)  Thus, the hiring decision was completely in the discretion of the selecting officials, Fardella and McBride. (Id.)

Thirty-nine candidates, including Ponisciak, placed themselves in contention for the two available positions.  (Id.)  In order to evaluate the applicants, Fardella and McBride solicited input from every candidate's supervisor.  (Id.)  Using the same criteria, each supervisor rated the candidate based upon their work performance regarding technical and operational knowledge, flexibility, initiative, oral/written communications and organizational and planning ability.  (Id.)

5

The supervisors evaluated the candidates on a 1 to 3 scale for each category with a rating of 1 being highest and 3 being lowest.  (Id.)  The scores were then tabulated by Fardella and McBride and compared across the spectrum of candidates.  (Id.)  Candidates receiving scores of 5, 6 or 7 from their supervisors proceeded for further consideration.  (Id.)  Candidates scoring 8 or higher were eliminated from contention.  (Id.)  Ponisciak received a score of 9 from his supervisor, James Heiser, and consequently did not garner further consideration.  (Id.)

Fardella and McBride used length of time in the position as the selecting factor amongst the remaining candidates to rectify stagnation in grade.  (Def.'s Mot. Summ. J. at 8.)  The two candidates chosen, Edward Keyser and Kim Barra, had been in their same positions since May 1983 and November 1987, respectively.  (Id.)  On April 5, 2004, Fardella and McBride selected these candidates and they accepted the temporary assignment.  (Id.)

**B. Amendment of Ponisciak's EEO Complaint**

On July 20, 2004, Ponisciak filed a formal EEO complaint.  (Def.'s Mot. Summ. J. Ex. 4 at 1.)  In response, on April 12, 2004, the SSA informed Ponisciak that it was accepting for investigation the four claims regarding his non-selection for the vacancies[4] at issue in this case.  (Id.)  On September 2, 2004, the case was assigned to an EEO investigator.  (Id.)  The investigation lasted from September 30, 2004 until December 3, 2004.  (Id.)  In a series of five letters to the SSA's Office of Civil Rights dated between November 12, 2004 and September 17, 2005, Ponisciak sought to amend his EEO complaint with various new claims.[5]  (Id.  at 2.)

---

[4]Job Announcements: SA 177963, SSA-2003-248, SSA-2003-243 and the 120 day temporary assignment.

[5]Specifically the letters were dated:  November 12, 2004; December 9, 2004; January 9, 2005; February 4, 2005; and September 17, 2005.

On November 18, 2005, the SSA notified Ponisciak by letter that the EEO investigation was complete and could not be amended.  (Def.'s Mot. Summ. J. Ex. 4(B).)  In the letter, Ponisciak was advised that he could petition the Judge at his administrative hearing to consolidate his new claims with the investigated claims.  (Id.)  Ponisciak neglected to petition the Judge in this manner, but instead attempted to add new and different claims to his EEO complaint.  (Def.'s Mot. Summ. J. Ex. 4 at 2 and Ex. C.)  The Administrative Judge and the Office of Federal Operations denied Ponisciak's request to add these claims to the existing EEO complaint.  (Id., Exs. D and E.)

Ponisciak brought this action pro se claiming acts of retaliation by the SAA in response to his union activities and EEO complaints.[6]  Defendant counters asserting that the Plaintiff cannot establish a retaliation claim. Defendant also contends that Ponisciak has failed to present any evidence that the SSA's legitimate actions were a pretext for retaliation.

II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991).  The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of

---

[6]A pro se litigant's complaint is to be construed liberally.  Ruff v. Healthcare Adm'r, 441 Fed.Appx. 843 (3d Cir. 2011).

a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'"  Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. Plaintiff. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion.  Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996).  If the court determines that there are no genuine issues of material fact, then summary judgment will be granted.  Celotex, 477 U.S. at 322.

## III.   DISCUSSION

### A. Retaliation in Employment Law

A claim of retaliation in employment discrimination cases is governed by the three step burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  The initial burden rests with the plaintiff to produce evidence that establishes a prima facie case of retaliation in the eyes of a reasonable fact finder.  If the plaintiff satisfies this

obligation, the burden then shifts to the employer to "articulate some legitimate,

nondiscriminatory reason for the employee's rejection."  McDonnell, 411 U.S. at 802.  Once the

employer discharges their light burden, the burden of production swings back to the plaintiff,

who must now show that the employer's explanation is pretextual.  Fuentes v. Perskie, 32 F.3d

759, 763 (3d Cir. 1994).  To establish pretext and defeat a motion for summary judgment, a

plaintiff must set forth some evidence, direct or circumstantial, from which a factfinder could

reasonably conclude that either (1) the employer's articulated legitimate reasons are not

credible, or, (2) the invidious retaliatory reason was more likely than not a determinative cause

of the employer's action.  Id. at 764.  The determining factor is whether discriminatory animus

motivated the employer and not the business acumen or competence of the employer.  Ezold v.

Wolf, Block, Schorr & Solis Cohen, 983 F.2d 509, 523 (3d Cir. 1992).  Thus, it does not matter

whether the employer's hiring decision was wrong or mistaken.  Rather, the plaintiff must

expose such "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in

the employer's proffered legitimate reasons for its action that a reasonable factfinder could

rationally find them unworthy of credence."  Id. at 527.  This prong lies at the intersection of

two important goals, the protections formulated in discrimination law and our society's

commitment to free decision-making by the private sector in economic affairs, and thus courts

have consistently described this as a difficult burden to overcome.  Fuentes, 32 F.3d at 765; see

also Ezold, 983 F.2d 509 at 531.

**B.  Analysis of Vacancies**

**1.      Prima Facie Case - Failure to Establish**

For the Plaintiff in this case to establish a prima facie case of retaliation under Title VII,

he must proffer evidence that: (1) he engaged in activity protected by Title VII, (2) the employer took an adverse employment action against him, and, (3) there was a causal connection between his participation in the protected activity and the adverse employment action.  <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 340 (3d Cir 2006).  This must be demonstrated by a preponderance of the evidence.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993).

The facts establish that Ponisciak satisfies the first two prongs.  Ponisciak is a long time union official, who has served in various capacities handling EEO cases.  Furthermore, Ponisciak has personally filed numerous EEO complaints on his own behalf.  In the eyes of the law, Ponisciak's activities are protected because "he has opposed any practice made an unlawful employment practice" and/or because "he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  <u>See</u> 42 U.S.C. 2000e-3(a).  Additionally, the SSA's failure to hire the Ponisciak nor amend his complaints constitutes an adverse employment action against him.  However, this Court finds that Ponisciak fails to set forth a causal connection between his protected activities and the SSA's actions.  Ergo, Ponisciak cannot establish a prima facie case and, therefore, cannot survive summary judgment.

Establishing the causation element of a prima facie case of discriminatory retaliation under Title VII requires inquiry into the motives of the employer and is highly context-specific.  <u>Kachmar v. SunGard Data Systems, Inc.</u>, 109 F.3d 173, 178 (3d Cir. 1997).  Proof of causation is commonly found in three types of evidence: (1) temporal proximity; (2) a pattern of antagonism by the employer in response to protected activity; and (3) the employer's knowledge of that activity.  <u>Walsh v. Wal Mart Stores, Inc.</u>, 200 Fed. Appx. 134, 136 (3d Cir. 2006).  Generally, more than one factor is required to sufficiently establish causation, however,

evidence of all three is not imperative, so long as the claim reasonably supports an inference of causation.  Walsh, 200 Fed. Appx. at 136; see also McCullers v. Napolitano, 427 Fed. Appx. 190, 195 (3d Cir. 2011).

Ponisciak's attempts at proving causation are unsuccessful for several reasons.  First, he fails to adequately pinpoint the exact dates when he undertook protected actions leading to retaliation.  This Court is left to speculate in an area where Ponisciak is required to produce evidence.  Even so, this Circuit has consistently made clear that the mere fact that an adverse employment action occurs after a plaintiff engages in protected activity is insufficient to establish a causal link.  McCann v. Astrue, 293 Fed. Appx. 848, 852 (3d Cir. 2008); Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003).  Second, the record is completely devoid of any pattern of antagonism that would demonstrate retaliatory motive on the part of the SSA.  Walsh, 200 Fed. Appx. at 137; Woodson v. Scott Paper Co., 109 F. 3d 913, 920 (3d Cir. 1997).  Additionally, in Ponisciak's Opposition to Agency's Motion for Summary Judgment, he avers to several hiring officials knowledge of his EEO activities.[7]  These contentions are unsubstantiated by the record provided to this Court.[8]  Absent evidence that the decision-maker had knowledge of the protected activity, "a substantial gap [exists] in any causal chain suggested [even] by temporal proximity."  Walsh, 200 Fed. Appx. at 137 (quoting McGorrian v. E.M.S.A., 85 Fed. Appx. 1, 4 (3d Cir. 2003)).

---

[7]Specifically, Ponisciak alleges: (1) Davis stated that she "vaguely recall(s) a prior EEO complaint filed by Mr. Ponisciak." (Pl.'s Opp'n Mot. Summ.J. ¶ 15);  (2) Fureman recounted that, "I was generally aware of prior EEO complaints having been filed by Mr. Ponisciak.  (Id. at ¶ 19); and, (3) Fardella and McBride admitted to prior knowledge of Ponisciak's EEO activities.  (Id. at ¶ 35).

Finally, even if the decision-makers had knowledge of Ponisciak's protected activity there was no evidence of retaliatory animus.  See Hutchins v. United Parcel Service, Inc., 197 Fed. Appx. 152 (3d Cir. 2006)(No causal connection where, even though hiring managers knew of plaintiff's prior protected activities, there was no evidence of discriminatory animus in not promoting plaintiff and therefore no prima facie case); Kachmar, 109 F.3d 173, 178 (3d Cir. 1997)(Stating that a causal connection is found where discriminatory animus was evidenced by superior telling employee that she was not on the management track because of her complaints concerning her salary, her "campaigning on women's issues", and her handling of female employee matters).  In fact, Ponisciak admitted that he had no evidence whatsoever that the hiring officials' intention was to retaliate against him.[8]  Evidence of retaliatory animus is even more important in this case due to Ponisciak's history of filing EEO complaints.  He has admitted to filing an EEO claim for every job he has applied and failed to be selected for since the 1980's.  (Ponisciak Dep. at 29, 30 and 33.)  Additionally, Ponisciak's union activities have placed him in a position of greater contact with the selecting officials.  Noting that selecting officials serve distinct agencies and work within confined geographic boundaries, it is to be expected that they would have some level of knowledge of Ponisciak's activities.  In these situations, it becomes even more crucial to the calculus of determining of causation to provide some evidence of retaliatory intent.  Ponisciak has failed to set forth any such evidence.   Thus, Ponisciak cannot establish a prima facie case of retaliation and summary judgment is granted in favor of the Defendant for this reason.

---

[8]In his deposition, Ponisciak asserted that he had no specific information that anyone at the SSA retaliated against him by not selecting him for the four positions.  See Ponisciak Dep. at 44, 89-90, 112 and 117.

**2.      A Legitimate, Non-Discriminatory Reason/Failure to Establish Pretext for**

**Retaliation**

Although Ponisciak's case fails because he cannot establish a prima facie case of

retaliation, we will assume arguendo that he satisfied this burden, and we will now examine: (1)

whether the Defendant has presented a "legitimate, non-discriminatory" reason for rejecting

Ponisciak for the vacancies, and if so, (2) whether the Defendant can show that the SSA's

actions were either not credible or that an "invidious retaliatory motive was more likely than not

a...determinative cause of these actions."  Fuentes, 32 F.3d at 764.

**(a)      Vacancy Announcement SA 177963:  Social Insurance Specialist**

In his Complaint, Ponisciak charges that the Defendant retaliated against him by not

selecting him for the Social Insurance Specialist position offered in job announcement SA

177963.  Specifically, Ponisciak asserts that the selectees, Allen and Carrasquillo, lacked the

requisite specialized experience and, therefore, neither met the minimum qualifications required

for the position.

The determinations regarding whether a candidate met the minimum qualifications were

ascertained by a computer system and the HR Specialist, DeMary.  Initially, a computer system

rated and ranked the individual candidates based upon their answers to a questionnaire.  After

receiving the ratings and rankings, DeMary examined the remaining eligible candidates to

confirm that they met the minimum requirements for the position.  In this case, both the

computer rating system and the HR Specialist determined that Allen and Carrasquillo met the

minimum qualifications and possessed the requisite specialized disability experience.  After

reaching this conclusion, DeMary prepared a Certificate of Eligibles for both grade levels and

13

forwarded these to the selecting official, Fureman.  Fureman convened a selection committee of four people to make recommendations regarding who to select for the positions.  Based upon these recommendations and after several candidates declined the position, Fureman chose Allen and Carrasquillo.

We find that the Defendant has adequately set forth a "legitimate, nondiscriminatory reason for the employee's rejection."  McDonnell, 411 U.S. at 802.  The SSA chose the best candidate available according to its evaluation system.  The selection process was based upon a computer program which rates and ranks candidates with a myopic view towards only the candidate's answers to the questionnaire and a blind eye to other prejudices or preconceptions. Ponisciak ranked at the bottom or near bottom on each of the Certificate of Eligibles determined by this program.  Further, OPM rules constrained the selection process and prohibited the hiring of Ponisciak.  Finally, the selection process was further legitimized by three separate human review mechanisms.

Ponisciak's arguments are not persuasive in this case and, accordingly, his attempts to paint the hiring process as pretextual must fail.  First, Ponisciak attacks the credibility of the SSA's selections claiming that the selectees were not qualified because they lacked the requisite specialized experience.  Specifically, he asserts that one of the candidates selected, Carrasquillo, was found not qualified under the internal vacancy announcement for this particular vacancy (though he was found qualified for the external vacancy).[9]  The Defendant admits this, but asserts that "a determination of whether a candidate had specialized disability experience may

---

[9]Noticing this inconsistency, DeMary went to her team leader, Paul Pelullo, to review the issue. He assessed Carrasquillo's applications and found that DeMary erred in not finding Carrasquillo eligible for the internal vacancy.  (Def.'s Mot. Summ. J. at 16.)

vary slightly from one occasion to another because the analysis is somewhat subjective and dependent, to some extent, on the candidates' own idiosyncratic description of their work experience." (Def. Mot. Summ. J. At 16.)  The United States Court of Appeals for the Third Circuit has recognized this ambiguity and this Court is compelled to grant a level of deference to the judgment of those doing the hiring.  Longstreet v. Holy Spirit Hospital, 67 Fed. Appx. 123, 126 (3d Cir. 2003); see also DeWeese v. Daimler Chrysler Corp., 120 F.Supp.2d 735, 738 (S.D. Ind. 2000)(finding that in the face of an ambiguous job posting the employer's explanation of what experience is required is accepted unless contradictory evidence exists).  Deference is granted in these situations because the actual qualifications of a position are not a matter that the courts should determine.  Longstreet, 67 Fed. Appx. at 126.

Next, this Court considers Ponisciak's claims that he is more qualified.  The Third Circuit has definitively stated that "unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment."  Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010).  Ponisiciak relies solely on his experience working in the Department of Labor from 1978-1982 for support.  He argues that the "qualification gap is great enough to be inherently indicative of discrimination."  (Pl.'s Opp'n to Summ. J. at 3).  The record and the relevant caselaw reject this assertion.  See Larkin v. Methacton School District, 773 F. Supp. 2d 508, 532 (E.D. Pa. 2011) (Plaintiffs unsupported assertion that she had more education and experience than the selected candidate is not sufficient to survive summary judgment); see also Fuentes, 32 F.3d at 765 (the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent).

15

Finally, Ponisciak baldly claims that the OPM rules regarding military service and the "Rule of Three" are a pretext for retaliation. His failure to support this assertion with any evidence makes it baseless. In sum, Ponisciak has not met his burden to provide evidence from which a factfinder could reasonably find that either the employer's articulated reason was not credible, or that a retaliatory motive was more likely than not behind his non-selection.

**(b)**      **Vacancy Announcement SSA-2003-248:  Social Insurance Specialist**

The Social Security Specialist vacancy announced under SSA-2003-243 was the internal counterpart to the SA 177963 external vacancy announcement. After receiving forty-eight applications, an assessment panel was convened to evaluate the applicants for SSA-2003-248. Ponisciak ranked second out of six candidates. Accordingly, Ponisciak was listed along with three other candidates for the GS-11 level (he was found not qualified for the GS-12 grade). However, after assessing the applicants for both vacancy announcements, Fureman decided to make the two selections from the external SA 177963 announcement. Consequently, none of the selections came from this internal vacancy announcement. This Court finds that the SSA, choosing to select who they believed were the best candidates for the position, has met its "relatively light burden" of providing a "legitimate, non-discriminatory" reason to not hire Ponisciak. Thus, the burden shifts to Ponisciak to show pretext.

Ponisciak raises two arguments asserting that his non-hiring was pretextual. First, he makes several contentions that were dealt with in SA 177963. Being the same job vacancy and noting that Ponisciak speaks of these claims interchangeably in his Complaint, this Court reasserts our previous analysis. Ponisciak does raise one new claim. He contends that under the union contract the SSA must first consider internal employees for a period of 10 workdays

16

before giving consideration to external candidates.  Defendant rejects this interpretation of the contract.  In her declaration the HR Specialist charged with preparing the announcement, DeMary, stated that there was no such requirement.  (DeMary Decl. at ¶ 13).

Additionally, the Defendant points to language in the contract evincing "[s]election from an OPM approved register or delegated examining unit Certificate of Eligibles" was not considered a competitive action and therefore not covered by the union contract.  The selections made under SA 177963 were from an OPM delegated examining unit Certificate of Eligibles and, accordingly, the contract did not apply.

Even if Ponisciak's interpretation of the contract was correct, there is still no proof of any retaliatory motive.  In fact, Ponisciak admitted in his deposition that he had no evidence whether the selecting official, Fureman, or anyone else at the SSA accepted his view of the contract or that anyone was attempting to retaliate against him by selecting from the external announcement.  (Ponisciak Dep. at 111-12).  Further, Ponisciak applied and was considered for the external vacancy announcement.  In the absence of any evidence of retaliation, the Court finds that Ponisciak cannot show that Defendant's actions were pretextual.

**(c)**     **Vacancy Announcement SSA-2003-243:  Social Insurance Specialist**

Ponisciak claims he was retaliated against when the SSA did not hire him for the Social Insurance Specialist position advertised as SSA-2003-243.  The SSA used an assessment panel to rank the candidates.  Ponisciak ranked twenty-sixth out of forty-eight candidates.  (Def.'s Mot. Summ. J. Ex. 2(A) at 8.)  Ponisciak scored a 173.  (Id.)  Only the eight candidates who scored a perfect score of 200 received further consideration.  There were seventeen other candidates who had higher scores than Ponisciak and were not referred.  (Id.)  The Defendant,

after vetting the applications for minimum qualifications and ranking the remaining candidates, chose the best qualified applicant. This justification surpasses the "relatively low burden" imposed, and we find that the defendant had a "legitimate, non-discriminatory" reason for not hiring Ponisciak.

Ponisciak relies upon weak arguments to support his contention that he was retaliated against in not being hired for this position. First, he claims that the Defendant did not create a best qualified list and, if it did, it failed to provide him with it. The record clearly demonstrates that such a list was prepared and provided to Ponisciak. (DeMary Decl. at ¶ 17 and Def.'s Mot. Summ. J. Exs. K, L and M). Additionally, Ponisciak argues that he would or should be on any such list. Regrettably, he posits no evidence from which to base this claim. These "unsupported assertions, conclusory allegations, or mere suspicions" cannot defeat a motion for summary judgment. Betts, 621 F.3d 249, at 252.

**(d)    120 Day Temporary Assignment to Operation Specialist: Operations Specialist**

Ponisciak applied for the internal vacancy for a temporary position not to exceed 120 days as an Operations Specialist with the SSA. There were two positions available: one in Process Area 3 under Operations Manager Fardella and one in Process Area 4 under Operations Manager McBride. In order to better evaluate the thirty-nine candidates, Fardella and McBride sought input from the candidates' supervisors. The supervisors rated all the candidates according to the same five work related criteria. Ponisciak scored a nine. The cutoff was a score of seven or lower. Seventeen candidates received further consideration. Ponisciak did not. Fardella and McBride made the final selections according to length of time in the same position i.e. stagnation in grade. Even if Ponisciak was considered, the length of time in his

18

position was less than those hired and would have precluded his selection.  With these facts settled, this Court finds that the Defendant has set forth a "legitimate, non-discriminatory" reason for not selecting Ponisciak for this position.

Ponisciak argues that the union contract mandates specific hiring procedures to be followed and that the deviations undertaken in this selection process are evidence of retaliation. Stated more concisely, Ponisciak posits that Fardella and McBride ignored the union contract and "used their own personal selecting criteria." (Compl. at ¶ 13.)  This argument fails for two reasons.  First, Ponisciak's claim ignores the facts.  The union contract states that "temporary promotions to a higher grade totaling 120 days or less"[10] are not part of the competitive hiring process.  Thus, they can be filled at the discretion of the hiring managers, Fardella and McBride. Second, Ponisciak admitted in his deposition that he had no evidence that either Fardella or McBride believed they were required to follow the competitive hiring procedures set forth in the union contract.  (Ponisciak Dep. at 120).  Thus, Ponisciak cannot show any discriminatory animus on their part.  He sets forth only that both Fardella and McBride knew of his earlier EEO filings.  We find this unpersuasive because the record shows that there was an even-handed application of the selection criteria which sanitized it from any finding of discriminatory animus.

**C.  Analysis of Claim Based Upon Non-Amendment of Ponisciak's EEO Complaint**

The final claim raised by Ponisciak is that the SSA retaliated against him when they refused to allow him to amend his initial EEO complaint.  The governing rule allows complaints to be amended at "any time prior to the conclusion of the investigation to include issues or

---

[10]Def.'s Mot. Summ. J. at Ex. I: Art. 26 Sec. 6(A)(7)

claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). The Defendant counter-argues that amendment was not allowed because the investigation had concluded,[11] and that Ponisciak was attempting to add new, unrelated complaints. The decisions of the Associate Commissioner for Civil Rights and Equal Opportunity, the Administrative Judge and the Office of Federal Operations declining Ponisciak's requests to amend the complaint to add the new claims provide ample support for Defendant's argument. (Def.'s Mot. Summ. J. at Exs. 4 A, B and C). Accordingly, the Defendant easily meets its burden of setting forth a "legitimate, non-discriminatory" reason for its actions, and the burden swings back to Ponisciak to show these actions to be a pretext for retaliation.

Ponisciak, however, neglects to proffer any evidence that would bring into question the credibility of the Defendant's actions or show some sign of retaliatory intent. To the contrary, the facts show that Ponisciak was informed that he could file another separate claim with the EEO or petition the Administrative Judge to consolidate the new claims with the investigated claims. It appears from the record that Ponisciak failed to take either action. In sum, Ponisciak has failed to point to any evidence which a factfinder could reasonably conclude that the Defendant's proffered reasons were pretextual and, thus, his claim cannot survive summary judgment.

---

[11]The investigation ran from September 30, 2004 to December 3, 2004. Ponisciak wrote five letters with only one being dated before December 3, 2004. This letter was dated November 12, 2005. At best, this would have arrived in the late stages of the investigation. However, this matter is moot since the added claims were deemed unrelated and, thus, not amendable.

**D.  CONCLUSION**

Having considered the evidence in the record in the light most favorable to Ponisciak, we find that Ponisciak has not established that a genuine issue of material fact exists.  Therefore, we grant Defendant's, Motion for Summary Judgment.

An appropriate Order follows.